UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

Jennifer P.[1], )
                                                 )
    Plaintiff, )
                                                 )
v. )    CIVIL NO. 1:21cv142
                                                 )
KILOLO KIJAKAZI, Acting )
Commissioner of Social Security, )
                                               )
    Defendant. )

OPINION AND ORDER

     This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and Supplemental Security Income under Title XVI of the Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

     The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2021.

2. The claimant has not engaged in substantial gainful activity since September 18, 2016, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease, bilateral knee osteoarthritis, bilateral hand osteoarthritis, fibromyalgia, obesity, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs, she can never climb ladders, ropes, scaffolds, she can occasionally balance, stoop, kneel, crouch, and crawl, she can frequently handle and finger with the bilateral upper extremities, and she should avoid unprotected heights. In addition, the claimant can understand, remember, and carry out simple instructions and tasks, she can make judgments on simple work-related decisions, she can respond appropriately to occasional interactions with coworkers, supervisors, and the general public, she can respond appropriately to usual work situations, and she can deal with routine changes in a routine work settings.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 29, 1969, and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969,

        and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 18, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 19-33).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on January 31, 2022. On April 11, 2022 the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present

4

case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ erred by not including limitations in the RFC with respect to her alleged headache impairment.   The ALJ found that Plaintiff's headaches were not "severe" as defined in the regulations, and thus the ALJ did not include headache limitations in the RFC. A "severe" impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Conversely, an impairment or combination of impairments is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). Mere diagnosis of a medically determinable impairment does not establish that the impairment affects the individual's ability to perform basic work activities. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004).

Plaintiff alleged disability beginning September 2016, but as the ALJ noted, records through 2019 either show no evidence of complaints of headaches or report that Plaintiff denied headaches (Tr. 20–21). This includes primary care records from March 2015 through April 2017, that do not mention headaches (Tr. 553–77), and two instances where Plaintiff denied headaches (Tr. 556, 561), as well as emergency room visits and other treatment records between April 2017 and April 2018 that do not mention headaches (Tr. 594–888), with at least one occasion where Plaintiff denied headaches (Tr. 623). The first mention of headaches in the record appears to be in May 2018, shortly after Plaintiff had a root canal and sought emergency room treatment for left-side jaw and facial pain accompanied by a headache (Tr. 889–90). This record reports that Plaintiff "does not have a past medical history of headaches or migraines" (Tr. 890).

In October 2018, Plaintiff reported symptoms including an increasing memory issue and

5

requested an MRI of the brain (Tr. 841). Plaintiff was referred to a neurologist (Tr. 844). Plaintiff made similar complaints of worsening memory and poor concentration in December 2018 and the record notes an upcoming appointment with a neurologist (Tr. 847–51). An MRI of the brain in December 2018 showed no acute abnormality, but some abnormal findings that had slightly progressed compared to a study from September 2010 (Tr. 956–57, 1580).

Plaintiff saw a neurologist, Dr. Amber Hetrick, in January 2019 and reported that she had a brain MRI that she had been told looked like multiple sclerosis (MS), and reported symptoms including dizziness, poor concentration, blurry vision, weakness, and daily headaches that had become worse in the past month (Tr. 19–20, 991). The neurologist reviewed the MRI but noted that Plaintiff did not have a history consistent with MS and that the "brain lesions are not classic" (Tr. 993). Dr. Hetrick discussed "nonpharmacologic management" of Plaintiff's symptoms, including the possibility of poor sleep causing the majority of Plaintiff's symptoms, and planned a sleep study (Tr. 993). Dr. Hetrick later added an addendum noting that she reviewed current publications regarding illicit substance use and abnormal brain MRIs and that she felt that the lesions on Plaintiff's MRI were "most likely related to methamphetamine use" (Tr. 19, 994).

Plaintiff returned to Dr. Hetrick in April 2019 (Tr. 20, 996–98). The sleep study had been normal with no evidence of sleep apnea and Dr. Hetrick prescribed Topamax for Plaintiff's headaches, with a plan for Plaintiff to return in four months (Tr. 20, 996–97). Plaintiff returned to Dr. Hetrick in August 2019, reporting trouble with memory, which she attributed to mold in her home, as well as intermittent tingling and numbness in her feet and lower extremities (Tr. 20, 1542). The neurologist noted that Plaintiff should continue Topamax for headaches and adjusted her medication for restless leg syndrome (Tr. 1544). Plaintiff returned in January 2020, reporting

6

"a lot of restless sensation in her legs" and had stopped taking Topamax; the neurologist recommended testing to see if she needed iron supplementation and continue to recommend nonpharmacologic measures (Tr. 1535–37). While the assessments in the reports for these two visits mention headaches, the narrative reports do not indicate that headaches were a focus of Plaintiff's complaints or treatment (Tr. 1535–37, 1542–44).

Other records in 2019 and 2020 do not document consistent report of headaches, even though Plaintiff did seek treatment for other complaints, such as back pain and arthralgia (Tr. 1304–1319, 1342–84, 1545–58, 1769–78). Plaintiff reported a headache in April 2019 related to pain in her right ear due to cerumen impaction, which was cleaned out (Tr. 1380–81). She denied headaches in July 2019 (Tr. 1376).

After reviewing the medical evidence, including the records from Dr. Hetrick showing that Plaintiff had stopped taking Topamax by January 2020, the ALJ considered Plaintiff's headaches in detail (Tr. 20–21). The ALJ concluded that the overall medical evidence did not establish a history of chronic headaches or ongoing headaches during the period under consideration with the frequency that Plaintiff alleged (Tr. 21, 52–53).

Clearly, this evidence does not compel a conclusion that Plaintiff requires additional limitations in the RFC assessment but, rather, supports the ALJ's conclusions. As there is no doubt that the ALJ's decision is supported by substantial evidence, the decision will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: July 1, 2022.

<u>s/ William C. Lee</u>
William C. Lee, Judge
United States District Court
